UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:22-cv-00445-AGF |
| HUM INDUSTRIAL TECHNOLOGY, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Amsted Rail Company has filed this action against its former employee, Brent Wilson, and the competing company that Wilson helped form, Hum Industrial Technology, Inc. ("Hum"). Plaintiff brings claims asserting patent infringement; misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836, and the Missouri Uniform Trade Secrets Act ("MUTSA"), Mo. Rev. Stat. §§ 417.450-417.467; breach of contract; and tortious interference with contract. Both Defendants have moved (ECF Nos. 16 & 20) to dismiss the non-patent claims for failure to state a claim.[1] For the reasons set forth below, the Court will deny both motions.

---

[1] Defendants have also moved for a protective order seeking to stay discovery on the non-patent claims until Plaintiff identifies its trade secrets with reasonable particularity. ECF No. 26. However, at the Rule 16 conference held on October 21, 2022, counsel for all parties agreed that such identification is already the subject of a pending discovery request by Defendants, that Plaintiff intends to respond to such discovery request in a timely manner, and that discovery may proceed in the ordinary course if Plaintiff does so. To reflect this agreement, the Court ordered in its Case Management Order that the parties respond in a timely manner to each other's pending

## BACKGROUND

The following facts are taken from the complaint.  Plaintiff is a railcar component manufacturer and service company.  Plaintiff employed Wilson for more than nine years, during which he was subject to an employment agreement aimed in part at protecting Plaintiff's trade secrets and confidential information.  During the course of his employment with Plaintiff, Wilson contributed to the development of remote sensor technology used to monitor the GPS location and the conditions of rail cars and to predict bearing and wheel failures before they occur, as well as related patents.  According to Plaintiff, Wilson demonstrated various "behavioral and performance issues" during his employment.  While investigating these issues, Plaintiff discovered that Wilson downloaded some of Plaintiff's digital files without authorization and in violation of his employment agreements.

Plaintiff and Wilson thereafter entered into a "Last Chance Agreement," signed on May 23, 2017.  In the agreement, Wilson acknowledged his unacceptable behavior and agreed to not download any more material from Plaintiff.  Wilson thereafter continued employment with Plaintiff until his termination on October 10, 2017.

A few years after his termination, Wilson founded Hum.  Wilson is currently the Chief Technology Officer and one of only two employees of Hum.  Plaintiff alleges that

---

discovery requests with as much specificity as reasonably possible. *See* ECF No. 30 at 2.  Therefore, the issue raised in Defendants' motion for protective order appears to have been resolved, and the Court will dismiss that motion as moot.

Wilson utilized Plaintiff's proprietary and patented technologies to impermissibly develop and market a product for Hum in direct competition with Plaintiff.

Plaintiff sent a demand letter to Hum on October 28, 2021, detailing Hum's alleged patent infringement. Plaintiff filed the instant suit on April 18, 2022.

## ARGUMENTS OF THE PARTIES

Defendants argue that Plaintiff fails to state a claim for trade secret misappropriation under either the DTSA or the MUTSA because Plaintiff fails to identify its alleged trade secrets with sufficient specificity and because any alleged secrecy of Plaintiff's data is destroyed by its public patent disclosures. Defendants further argue that Plaintiff fails to plausibly allege that the alleged trade secrets have independent economic value derived from their secrecy or that Defendants misappropriated such trade secrets.

Alternatively, Defendants argue that Plaintiff's claim under the DTSA is barred by the three-year statute of limitations set forth in 18 U.S.C. § 1836(d). Defendants reason that the limitations period began to run on or about May 23, 2017, when Plaintiff first discovered Wilson's alleged download of company files and entered the Last Change Agreement. Because Plaintiff did not file suit until more than three years later, Defendant argues that the DTSA claim is time barred.

Next, Defendants argue that Plaintiff fails to state a claim for breach of contract or tortious interference because both claims are derivative of the trade secret claims and therefore preempted under the MUTSA. Alternatively, Defendants argue that Plaintiff has failed to plausibly allege the elements of its contract and tortious interference claims.

3

In response, Plaintiff contends that it is not required to plead its trade secrets with particularity and that it has sufficiently alleged all elements of a trade secret misappropriation claim under either the DTSA or MUTSA. Further, Plaintiff alleges that its DTSA claim is not time-barred because it did not discover Defendants' misappropriation until 2021. Although Plaintiff concedes that it knew of Wilson's unauthorized downloading of certain proprietary data by the time it entered the Last Chance Agreement, Plaintiff argues that Wilson also promised in that Agreement not to download any other materials from Plaintiff. Plaintiff maintains that it had "every right to believe that its employees would live up to their promises"; that even after Wilson's termination, Plaintiff had no indication that Wilson "would violate his contractual obligations and form a new company thereafter to exploit the trade secrets he learned"; and that Plaintiff did not learn of Hum and Hum's connection to Wilson until shortly before sending its demand letter on October 28, 2021. ECF No. 21 at 9-10.

As to the breach of contract and tortious interference claims, Plaintiff argues that such claims are not limited to utilization of Plaintiff's trade secrets but also extend to other aspects of Wilson's employment agreement, such as provisions requiring the return of non-trade secret documents and prohibiting damage to or interference with Plaintiff's existing or anticipated business interests.[2] Plaintiff further contends that it has adequately

---

[2] Plaintiff also argues that Wilson's motion to dismiss the breach of contract claim (Count III) should be denied because Wilson has not provided a supporting memorandum as required by the local rules; instead, Wilson merely incorporated by reference Hum's memorandum, which does not address Count III. The Court need not reach this argument because it concludes that Wilson's motion should be denied on other grounds.

4

pled the elements of both its contract and tortious interference claims, based on Wilson's alleged breaches of his employment agreement and Hum's alleged inducement of such breaches.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### Misappropriation of Trade Secrets (Counts I and II)

To state a claim for misappropriation of a trade secret under the DTSA, a plaintiff must show that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines a trade secret broadly, to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Under the DTSA, a misappropriation may occur in any of three ways: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent.  18 U.S.C. § 1839(5).

To state a claim under the MUTSA, a plaintiff must demonstrate (1) the existence of protectable trade secrets, (2) misappropriation of those trade secrets by the defendant, and (3) damages.  Mo. Rev. Stat. § 417.453(2).  The MUTSA likewise defines a "trade secret" broadly to include information that "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Mo. Rev. Stat. § 417.453(4).

a.  Trade Secret Identification

The undersigned is persuaded by decisions of other judges of this Court that "a trade secret may be alleged broadly as there is no specific requirement for particularity of trade secret allegations during the pleading stage." *Design Nine, Inc. v. Arch Rail Grp., LLC*, No. 4:18CV428CDP, 2019 WL 1326677, at *4 (E.D. Mo. Mar. 25, 2019); *see also LifeScience Techs., LLC v. Mercy Health*, No. 4:21CV01279SEP, 2022 WL 4547002, at *5 (E.D. Mo. Sept. 29, 2022); *Roeslein & Assocs., Inc. v. Elgin*, No. 4:17CV1351JMB, 2019 WL 195089, at *12 (E.D. Mo. Jan. 15, 2019) (holding same).  Indeed, requiring

6

identification with specificity in the publicly-filed complaint may "paradoxically jeopardize protecting those trade secrets." *See Deluxe Fin. Servs., LLC v. Shaw*, No. CV 16-3065 (JRT/HB), 2017 WL 3327570, at *4, n.3 (D. Minn. Aug. 3, 2017).

Plaintiff's complaint specifically alleges that its trade secrets consist of the research and development conducted for use in the development of Plaintiff's technology; algorithms and data relating to temperature and vibration parameters with a predicted bearing failure rate and probability; algorithms and data relating temperature and vibration parameters with a predicted wheel failure rate and probability; and algorithms and data using temperature and vibration parameters to determine the severity of a detected condition. Plaintiff describes the steps it took to keep this data secret and why the data is of economic value. "More specific factual determinations regarding any alleged trade secret is premature at this point and more appropriate for the summary judgement stage." *Design Nine, Inc.*, 2019 WL 1326677, at *4.

Plaintiff has also sufficiently alleged that Defendants misappropriated the trade secrets and that it was damaged as a result, thereby sufficiently alleging claims under both the MUTSA and DTSA. *See id.* Specifically, Plaintiff alleges that Wilson accessed, viewed, copied, and downloaded the above-noted data without authorization and then, with Hum's knowledge and acquiescence, incorporated or directed the incorporation of the data into the Hum algorithm, including the "Hum Bearing Index." Plaintiff also claims that it was damaged from the loss of trade secrets because of lost profits.

Nor can the Court conclude based on the pleadings alone that each of Plaintiff's alleged trade secrets is sufficiently disclosed in Plaintiff's public patent applications so as

7

to no longer be considered a secret. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021) ("[W]hile the precise information provided within or directly ascertainable from a patent or other published document cannot constitute a trade secret, that does not . . . mean that a patentee is precluded from cultivating trade secrets that go beyond the corpus of the patent or that refine the patent's process in some proprietary way.") (cleaned up and citation omitted).  The extent of the overlap would be better addressed at the summary judgment stage, on a more complete record.

    b.  <u>DTSA Statute of Limitations</u>

"[T]he possible existence of a limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943 (8th Cir. 2021) (internal citations omitted).  The complaint does not do so here.

In particular, it is not clear from the face of the complaint whether Plaintiff's discovery in 2017 that Wilson downloaded certain files without authorization was sufficient to trigger the running of the DTSA's three-year statute of limitations under 18 U.S.C. § 1836(d).  Section 1836(d)'s limitation period begins on "the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered."   Additional evidence and argument is needed to establish exactly what files Plaintiff discovered were downloaded at that time and how those files relate (if at all) to Plaintiff's alleged trade secrets and any alleged misappropriation.  At this stage, Defendants have not established that Plaintiff's DTSA claims is time barred.

**Breach of Contract and Tortious Interference (Counts III and IV)**

    a.  Preemption under the MUTSA

Generally, the MUTSA will "displace conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. This provision preempts "civil claim[s] that are derivative of a claim of misappropriation of trade secrets," *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70-CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002), or that "are based on facts related to the misappropriation of trade secrets claim," *Reliant Care Mgmt., Co. v. Health Sys., Inc.*, No. 4:10CV38 CDP, 2011 WL 4369371, at *1 (E.D. Mo. Sept. 19, 2011). "A claim based on facts that are independent of the trade secret claims, however, will not be preempted." *Design Nine, Inc.*, 2019 WL 1326677, at *5.

The Court cannot yet determine the extent to which Plaintiff's contract and tortious interference claims are derivative of its trade secret claims. No legal determination has been made that the information at issue is in fact a trade secret, and until such determination is made, any ruling as to preemption under the MUTSA would be premature. *See id.* at *7; *LifeScience Techs*, 2022 WL 4547002, at *7; *EnviroPAK Corp. v. Zenfinity Capital, LLC*, No. 4:14-CV-00754-ERW, 2015 WL 331807, at *6 (E.D. Mo. Jan. 23, 2015) (all holding the same).

    b.  Breach of Contract and Tortious Interference

To prevail on a breach-of-contract claim, a plaintiff must prove: 1) the existence of a valid contract; 2) the rights and obligations of each party pursuant to that contract; 3) its performance in accordance with the contract; 4) a breach of the contract by the defendant;

9

and 5) damages suffered by the plaintiff. *Keveney v. Mo. Military Acad.,* 304 S.W.3d 98, 104 (Mo. 2010). To prevail on a claim tortious interference with contract claim, a plaintiff must prove 1) the presence of a contract; 2) the defendant's knowledge of the contract; 3) intentional interference by defendant by the defendant inducing or causing a breach of the contract; 4) absence of justification; and 5) damages resulting from defendant's conduct. *Howard v. Youngman,* 81 S.W.3d 101, 112-13 (Mo. Ct. App. 2002).

At this stage, Plaintiff has plausibly pleaded a breach of contract claim against Wilson by alleging the existence of an employment agreement; the terms of that agreement; Wilson's breach of that agreement, including his theft of proprietary information that may extend beyond alleged trade secrets; and damages suffered by Plaintiff in the form of lost profits.

Likewise, Plaintiff has plausibly pleaded a tortious interference with contract claim against Hum by alleging facts from which it could reasonably be inferred that Hum knew of Wilson's employment agreement and induced Wilson's breath thereof. In arguing otherwise, Hum contends that Plaintiff has not alleged "someone other than Mr. Wilson took some action that induced Mr. Wilson to breach his contract with [Plaintiff]." ECF No. 24 at 18. In other words, Hum appears to rely on the rule that "[a] claim for tortious interference with contractual relations contemplates interference from a third party, not from a party to the contract itself." *See, e.g.*, *Fields v. R.S.C.D.B., Inc.,* 865 S.W.2d 877, 879 (Mo. Ct. App. 1993).

But at this stage, the Court is persuaded by Plaintiff's argument that, when acting in his capacity as the CTO of Hum, Wilson was in fact the corporation (and therefore not

10

a party to the employment agreement) for the purpose of the tortious interference claim. *See, e.g.*, *Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, 918 F. Supp. 2d 916, 937 (E.D. Mo. 2013) (holding the same and granting summary judgment in favor of the plaintiff on tortious interference claim against a competitor company formed by the plaintiff's former employees, where evidence established that the competitor corporation "through the actions of [the former employees] as its agents" induced the employees to perform work on its behalf in breach of their employment agreements with plaintiff); *see also Howard v. Youngman*, 81 S.W.3d 101, 116–17 (Mo. Ct. App. 2002) ("[A] corporate officer or agent acting for the corporation is the corporation for purposes of a tortious interference cause of action . . . because corporations can *only* act through their agents.") (emphasis in original and internal citation omitted). The Court will therefore deny Defendants' motions to dismiss the contract and tortious interference claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants motions to dismiss are **DENIED**. ECF Nos. 16 & 20.

**IT IS FURTHER ORDERED** that Defendants' motion for a protective order and for pre-discovery identification of trade secrets and confidential information is **DISMISSED as moot**. ECF No. 26.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2022.

11